# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM P. GARCIA, | CASE NO. 1:10-CV-00447-OWW-DLB PC |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS REGARDING PLAINTIFF'S MOTION FOR |
| v. | PRELIMINARY INJUNCTION |
| KEN CLARK, et al., | (DOC. 8) |
| Defendants. / | OBJECTIONS, IF ANY, DUE WITHIN THIRTY DAYS |

## Findings And Recommendations

I.     **Background**

    A.     **Procedural History**

Plaintiff William P. Garcia ("Plaintiff") is a prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR").  Plaintiff is proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act ("RLUIPA").  Plaintiff initiated this action by filing his complaint on March 12, 2010.  On May 24, 2010, Plaintiff filed his first amended complaint.

Pending before the court is Plaintiff's May, 5, 2010, motion for a preliminary injunction. Plaintiff alleges that he cannot perform his religious practices and is being denied a diet in accordance with his religious beliefs in violation of the First Amendment and RLUIPA.  By the instant motion, Plaintiff seeks an order directing defendants to allow him (and other prisoners) the right to practice his religion and to provide him with a reasonable accommodation to eat his

religious diet.[1]

On March 29, 2011, the court ordered Defendants to respond to Plaintiff's motion for injunctive relief. On April 19, 2011, Defendants filed their opposition to the motion. On May 9, 2011, Plaintiff filed his reply.

**II.    Motion For Preliminary Injunction**

**A.    Legal Standard**

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 129 S. Ct. 365, 374 (2008) (citations omitted). The purpose of preliminary injunctive relief is to preserve the status quo or to prevent irreparable injury pending the resolution of the underlying claim. *Sierra On-line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter*, 129 S. Ct. at 376. An injunction may only be awarded upon a clear showing that the movant is entitled to relief. *Id.*

**B.    Analysis**

Plaintiff is currently detained at California Substance Abuse and Treatment Facility and State Prison ("SATF"). Plaintiff's action concerns an alleged deprivation of his right to perform his religious Jewish Orthodox practices. Plaintiff contends that there is no place to pray, wash, and stand and face East during breakfast. Correctional officers harass, degrade and mock him, and other Jewish inmates, during breakfast. Defendant Ibarra and other correctional officers continuously take his Kosher food. For a period of time, Plaintiff refused to eat breakfast because he could not perform his religious duties. Plaintiff contends that Defendants now are attempting to deny him all Kosher meals because he is not picking up his morning meal.

---

[1]Plaintiff may not obtain injunctive relief on behalf of other prisoners. "A federal court may issue an injunction if it has personal jurisdiction over the parties and subject matter jurisdiction over the claim; *it may not attempt to determine the rights of persons not before the court*." *Zepeda v. United States Immigration Service*, 753 F.2d 719, 727 (9th Cir. 1985) (emphasis added).

1    Defendants oppose.[2]

2        **1.      Likelihood of Success On The Merits**

3        Plaintiff contends that he has been unable to practice his religion and has been denied his

4    religious diet by defendants.  (Motion, pp. 4 and 5).  Plaintiff contends that such deprivation

5    violates his right to practice his religion.  Defendants contend that they are not "refusing to

6    provide Plaintiff with his Kosher religious diet."  (Opp'n 5:10).

7        "Inmates clearly retain protections afforded by the First Amendment . . . including its

8    directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz,*

9    *482 U.S. 342, 348 (1987)* (citations omitted).  However, "[l]awful incarceration brings about the

10   necessary withdrawal or limitation of many privileges and rights, a retraction justified by the

11   considerations underlying our penal system." *Id.* (citation and internal quotation marks omitted).

12   A prison regulation may therefore impinge upon an inmate's right to exercise his religion if the

13   regulation is "reasonably related to legitimate penological interests." *Shakur v. Schriro*, 514 F.3d

14   *878, 884 (9th Cir.2008)* (citations omitted).  In contesting the validity of a prison regulation, an

15   inmate must also show that his religious practice is "sincerely held" and "rooted in religious

16   belief. *Id.* at 884-85.

17       A prisoner's ability to freely exercise his religion is also protected by the Religious Land

18   Use and Institutionalized Persons Act ("RLUIPA"). *42 U.S.C. § 2000cc-1*. Under RLUIPA,

19   prison officials are prohibited from imposing a "substantial burden" on religious exercise unless

20   there exists a compelling governmental interest and the burden is the least restrictive means of

21   satisfying that interest. *Alvarez v. Hill*, 518 F.3d 1152, 1156 (9th Cir.2008) (citing *Warsoldier v.*

22   *Woodford*, 418 F.3d 989, 994 (9th Cir.2005)). For the purposes of RLUIPA, a "substantial

23   burden" is one that imposes a "significantly great restriction or onus" upon a prisoner's exercise

24   of religion. *Warsoldier*, 418 F.3d at 995 (citation omitted).

25       As the standards under RLUIPA are more favorable to Plaintiff, the Court begins its

26

27       [2]Defendants also filed objections to evidence and declarations submitted by Plaintiff in support of his
28   motion for preliminary injunction.  The court has not relied on the referenced evidence and declarations in deciding
     the instant motion.  Accordingly, it is recommended that Defendants' objections be OVERRULED.

3

1    analysis under that act.

2       Plaintiff states that there is no place to pray and wash, and stand and face East towards

3   Israel during the breakfast meal.  (Motion 2:17-19).  Defendants claim that Kosher meals are

4   available, but do not claim that Plaintiff is able to perform his religious duties before eating.[3]  In

5   other words, Defendants have not disputed Plaintiff's claim that there is no place to pray, wash,

6   and stand and face East towards Israel during the breakfast meal.  While Defendants appear to

7   believe that Plaintiff can perform these duties before arriving at breakfast, Plaintiff asserts that

8   there is a distinction between morning prayers and prayers before and after meals.  (Reply 8:3-

9   18).  As Defendants are preventing him from performing these rituals at the breakfast meal, they

10   are imposing a substantial burden on Plaintiff's exercise of his religion without any compelling

11   government interest.

12       Plaintiff is effectively denied a Kosher meal at breakfast.  However, Plaintiff's claims are

13   not limited to the breakfast meal.  Plaintiff additionally claims that Defendant Ibarra and other

14   correctional officers take his Kosher food from him.  (Motion 3:3-9; Memorandum 5:14-19).

15   Plaintiff states that he went on a hunger strike based on the deliberate taking of his food, but was

16   unable to sustain the strike for more than 15 days because of weight loss.  (Memorandum 5:23-

17   27).  Plaintiff further claims that Defendants would take his Kosher breakfast and lunch, resulting

18   in forced starvation.  (Reply 2:8-16).

19       Defendants believe, based on a statement by Plaintiff, that his Kosher food is no longer

20   taken from him, and that such activity ceased on March 17, 2010.  (Opp'n 6:23-25).  Defendants

21   miss the mark for two primary reasons.  First, Plaintiff did not admit that defendants stopped

22   taking his Kosher meals on March 17, 2010.  Although Plaintiff indicated that he started a hunger

23   strike on that date, he only maintained the strike until April 1, 2010.  (Memorandum 5:14-27).

24

25         [3]Defendants spend considerable time discussing the preparation, condition, storage and delivery of Kosher diet food items.  Defendants submitted evidence demonstrating that all

26   Kosher food items at SATF are prepared according to Kosher guidelines, are properly handled and are not rotten or spoiled.  (Opp'n 5:10-28, 6:1-12).  While Plaintiff asserted claims regarding

27   the condition of the Kosher food, the focus of the instant motion is the ability to receive those meals and perform his religious duties at the breakfast meal.  Thus, Defendants' argument

28   regarding CDCR's food preparation is not wholly relevant.

Second, Defendants have not addressed Plaintiff's contention that he is being denied Kosher lunches and dinners because he is not picking up his morning meal or that he is forced to eat regular meals to avoid being harassed and degraded. Defendants' assertion that Plaintiff cannot demonstrate likelihood of success on the merits regarding a claim of verbal harassment is unavailing in this instance. Plaintiff's contention that he is being harassed and degraded is directly linked to his ability to freely exercise his religion and to obtain his Kosher diet. Defendants have not countered Plaintiff's allegation that there is no place for Jewish inmates to eat in peace without being degraded. Plaintiff believes that allowing him to take his Kosher religious food back to his cell, where he can wash, pray, cleanse and stand facing East in prayer does not result in a safety or security issue. Defendants have not addressed this argument, identified any facility security issues posed by this accommodation, or, more importantly, demonstrated a compelling interest in precluding Plaintiff from performing his religious duties.

### 2. Irreparable Harm

Plaintiff contends that he has suffered serious physical, mental and emotional injuries resulting from the denial of his religious diet and practices. (Motion 3:13-17). Among other things, Plaintiff explains that he is forced to sin and he can no longer practice his Jewish religion in accordance with its laws. (Memorandum 4:4-9).

Defendants argue that Plaintiff cannot show how he is being irreparably harmed by having to eat his breakfast in the dining hall instead of his cell. (Opp'n 4:3-4). However, Defendants fail to address Plaintiff's assertion of irreparable harm resulting from the inability to perform his religious duties and the inability to obtain Kosher meals.

### 3. Balance of Equities And Public Interest

Plaintiff contends that the balance of equities and public interest weigh in his favor. Plaintiff further believes that the public interest will be served by protecting the constitutional rights of all of its members. Defendants do not address the balance of equities or the public interest.

### III.   Conclusion And Recommendation

Based on the above, the court RECOMMENDS that Plaintiff's motion for preliminary

injunction, filed May 5, 2010, be GRANTED.  The court FURTHER RECOMMENDS entry of a

preliminary injunction as follows:

1.  Defendants shall provide Plaintiff with the Kosher meals that are provided other similarly situated prisoners; and
2.  Defendants shall provide a means for Plaintiff to pray and to perform him religious duties prior to, during and/or after the breakfast meal.

These Findings and Recommendation are submitted to the United States District Court

Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 631(b)(1)(B) and Rule 305

of the Local Rules of Practice for the United States District Court, Eastern District of California.

Within **thirty (30) days** after being served with a copy of these Findings and Recommendations,

the parties may file written objections with the Court.  Such a document should be captioned

"Objections to Magistrate Judge's Findings and Recommendations."  Replies to the objections

shall be served and filed within **fourteen (14) days** after service of the objections.  The Court

will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1).  The parties are

advised that failure to file objections within the specified time may waive the right to appeal the

District Court's order.

IT IS SO ORDERED.

Dated:   **July 8, 2011**            **/s/ Dennis L. Beck**
                                     UNITED STATES MAGISTRATE JUDGE